IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Civil Action No. |
| AMERICAN RIVER TRANSPORTATION CO., *in personam;* M/V JULIE WHITE, and Barges AT 664, SG 542, CGB 361 and CBL 314, to include engines, tackle, gear, appurtenances, and all accessories, *in rem*, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>UNITED STATES' VERIFIED ADMIRALTY COMPLAINT</u>

<u>NATURE OF ACTION</u>

The United States, acting under the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 401-76, brings a strict liability claim against American River Transportation Co., *in personam*; against the M/V JULIE WHITE, a tug or towboat that it owns and operates, *in rem;* and against certain barges that were under the M/V JULIE WHITE's control on March 6, 2011—AT 664, SG 542, CGB 361, and CBL 314—*in rem*.  These parties are referred to collectively as "ARTCO."

<u>PARTIES</u>

1. Plaintiff United States is a sovereign nation authorized to sue under 28 U.S.C. § 1345 (United States as Plaintiff).  The United States Army Corps of Engineers is an agency of the United States.

2. At all material times, ARTCO was, and it remains, a corporation engaged in the business of carriage of goods on water for hire.

3. ARTCO is a wholly owned subsidiary of the Archer Daniels Midland Company.

4. At all material times, ARTCO owned, operated, chartered, managed, or controlled the M/V JULIE WHITE and barges AT 664, SG 542, CGB 361, and CBL 314.

5. ARTCO uses the M/V JULIE WHITE to tow barges on the inland waters of the United States, including the Upper Mississippi River.

6. Barges AT 664, SG 542, CGB 361, and CBL 314 are, or were, open hopper barges used to transport cargo on the inland waters of the United States.

## JURISDICTION AND VENUE

7. This is an admiralty action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1) (giving district courts original jurisdiction of admiralty or maritime cases).

8. The Court has jurisdiction over the subject matter and the parties. *See* 28 U.S.C. §§ 1333, 1345 (giving district courts original jurisdiction of all civil actions, suits, or proceedings commenced by the United States) & 1355 (giving district courts original jurisdiction "of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise . . . .").

9. Venue is proper because a substantial part of events giving rise to this cause of action occurred in this judicial district. *See* 28 U.S.C. § 1391(b) (placing venue in a

judicial district in which a substantial part of the events or omissions giving rise to the claim occurred).

Facts

Lock and Dam No. 25

10.     The U.S. Army Corps Upper Mississippi River Nine Foot Navigation Project was authorized by the Rivers and Harbors Act of 1930. The Project creates a nine-foot deep navigation channel, on which ARTCO and others rely to move cargo. Lock and Dam No. 25 is one among a system of 29 locks and dams that together form the Project. Pools of water collect behind each dam. Using locks built into the dams' structure, boats climb or descend from one pool to the next. The presence of the channel facilitates marine transportation. But for its existence, ARTCO could not move products as efficiently, if it could do so at all.



3

11. Lock and Dam 25, located at Upper Mississippi River Mile 241.4, was put into operation on May 18, 1939. There is a single lock chamber on the Missouri side, from which a 1,296 foot-long dam extends across the river to the Illinois shore. The dam is fitted with 17 gates that are raised or lowered, as necessary, to control water depth in the pool above the dam. When the River runs high, these gates are often raised completely to allow the free flow of water.

12. All vessels wishing to pass Lock and Dam No. 25 must "lock" through. To accomplish this, a vessel enters the lock. Gates then close behind it to form a chamber. Depending on whether the vessel is traveling up- or downriver, the water level in the chamber is raised or lowered to match the pool above or below it through the use of valves. When opened, filling valves, located near the upper gate, allow the water level in the chamber to rise. Conversely, emptying valves, situated near the lower gate, drain the chamber.

## The Accident

13. On March 6, 2011, the M/V JULIE WHITE was downbound on the Upper Mississippi River. It approached Lock and Dam No. 25 towing rock-laden barges AT 664, SG 542, CGB 361, and CBL 314. Lock and Dam No. 25 is within the geographic boundaries of this District. The M/V JULIE WHITE and her barges were within its boundaries at all material times.

14. Because the river level was high, all 17 gates were up and out of the water.

15. Winds were light and visibility was good.

16.	The M/V JULIE WHITE's pilot was having difficulty lining the tug and her barges up with the lock chamber.  An ever-present cross-current, called "outdraft," drew the combination toward the Illinois side of the River.  The tendency of vessels and their tows to be pulled by outdraft is a constant phenomenon.

17.	The M/V JULIE WHITE flotilla approached the lock chamber at about 1:00 p.m., March 6, 2011.  Army Corps personnel standing at the end of the shore wall accepted a line from the M/V JULIE WHITE's crew, which is routine, however, the JULIE WHITE's pilot soon asked them to release it, which they did.

18.	The pilot was unable to control the M/V JULIE WHITE and her barges.  The combination drifted toward, and struck, the river wall.  The tug broke apart from the barges.  The vessel's crew was, however, able to reconnect them.

19.	At around 3:00 p.m., the M/V JULIE WHITE's pilot made a second attempt to enter the lock chamber.  During this second attempt, the tug and tow combination struck the "bullnose" at the end of the river wall.  Barges AT 664, SG 542, CGB 361, and CBL 314 again broke apart from the towboat.



20. Barges AT 664, SG 542, CGB 361, and CBL 314 drifted downstream and capsized as the River's current pushed them against the upriver side of the dam face and gates.



6

21.     The M/V JULIE WHITE tug and her barges damaged the bullnose and the dam face on impact.

22.     ARTCO—acting through Okie Moore Diving and Salvage Company, St. Charles, Missouri—made sporadic attempts to salvage the errant barges. Notwithstanding these efforts, all four barges remained lodged against Lock and Dam No. 25 for months. The barge that blocked Gate #2—and prevented it from closing—was removed on May 26, 2011. The others were salvaged between July 15 and July 26, 2011.

23.     Before they were salvaged, the presence of the barges altered the River's flow, focused the force of the current at certain points along the dam face, and caused portions of the lock wall foundation, and also the riverbed on the downstream side of the facility, to be washed away.

Count I—Strict Liability Arising Under the Rivers and Harbors Act of 1899 for the Allisions of the M/V JULIE WHITE and Its Tows with Lock and Dam No. 25

24.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph.

25.     ARTCO, as owner and operator of the M/V JULIE WHITE, and Barges AT 664, SG 542, CGB 361, and CBL 314, is a "person" within the meaning of the Rivers and Harbors Act, as amended, 33 U.S.C. § 408.

26.     The Upper Mississippi River in the vicinity of Lock and Dam No. 25 is a navigable water of the United States within the meaning of 33 U.S.C. § 408.

27.     Lock and Dam No. 25 is a public work built and maintained for the preservation and improvement of the navigable waters of the United States within the

7

meaning of 33 U.S.C. § 408.

28. At all material times, the M/V JULIE WHITE, and the barges it towed, AT 664, SG 542, CGB 361, and CBL 314, were vessels "used and employed" within the meaning of 33 U.S.C. § 412.

29. ARTCO is liable to the United States for the cost of repairing damage to Lock and Dam No. 25 caused by the M/V JULIE WHITE's sunken barges, to include pre-judgment interest.

Count II—Strict Liability Arising Under the Rivers and Harbors Act of 1899 for Failure to Timely Remove Barges AT 664, SG 542, CGB 361, and CBL 314

30. The United States refers to and incorporates by reference, as though fully set forth herein, each and every foregoing paragraph.

31. The M/V JULIE WHITE, and barges AT 664, SG 542, CGB 361, and CBL 314, each constitute a "vessel, raft, or other craft" within the meaning of 33 U.S.C. § 409.

32. ARTCO is the "owner, lessee, or operator" of the M/V JULIE WHITE, and Barges AT 664, SG 542, CGB 361, and CBL 314, as those terms are used within 33 U.S.C. § 409.

33. The Rivers and Harbors Act, at 33 U.S.C. § 409, places a duty on the "owner, lessee, or operator of such sunken craft to commence the immediate removal of the same . . . ."

34. ARTCO breached this duty by failing to expeditiously salvage its four barges.

8

35. At all material times, the M/V JULIE WHITE, and barges AT 664, SG 542, CGB 361, and CBL 314, were vessels "used and employed" within the meaning of 33 U.S.C. § 412.

36. ARTCO's failure to immediately remove barges AT 664, SG 542, CGB 361, and CBL 314 caused ongoing damage to Lock and Dam No. 25.

37. ARTCO is liable to the United States for the cost of repairing damage to Lock and Dam No. 25 caused by the M/V JULIE WHITE's sunken barges, to include pre-judgment interest.

<u>Damages</u>

38. ARTCO is liable to the United States for damage to Lock and Dam No. 25 in the amount of at least $8,623,498.65, plus interest and costs.

WHEREFORE, the United States prays:

1. That ARTCO be summoned to answer this Complaint and that a Warrant be issued for the arrest of the M/V JULIE WHITE, its engines, apparel, tackle, and appurtenances; and also that a warrant be issued for the arrest of barges AT 664, SG 542, CGB 361 and CBL 314;

2. That judgment of condemnation and sale be entered against the M/V JULIE WHITE, *in rem*, and against barges AT 664, SG 542, CGB 361 and CBL 314, *in rem*, and that, to the extent possible, the United States' claim with interest and costs be paid out of the proceeds thereof;

9

      3.      That judgment be entered in favor of the United States against ARTCO in an amount of at least $8,623,498.65, or a greater sum as may be proven, plus interest and costs;

      4.      That the United States be awarded further relief as the Court may deem just and proper.

DATED:	January 13, 2014

                                                          Respectfully submitted,

                                                          STUART F. DELERY
                                                          Assistant Attorney General

                                                          RICHARD G. CALLAHAN
                                                          United States Attorney

                                                          NICHOLAS P. LLEWELLYN
                                                          Assistant United States Attorney
                                                          Thomas P. Eagleton U.S. Courthouse
                                                          111 South Tenth Street, 20th Floor
                                                          St. Louis, Missouri 63102
                                                          Tel. (314) 539-7637
                                                          Fax (314) 539-2777
                                                          nicholas.llewellyn@usdoj.gov

                                                          */s/ Michael A. DiLauro*
                                                          MICHAEL A. DiLAURO
                                                          JESSICA G. SULLIVAN
                                                          Trial Attorneys
                                                          Aviation & Admiralty Litigation
                                                          Torts Branch, Civil Division
                                                          U.S. Department of Justice
                                                          (overnight courier)
                                                          1425 New York Ave., N.W., Ste. 10146
                                                          Washington, D.C. 20005
                                                          (mailing)
                                                          P.O. Box 14271
                                                          Washington, D.C. 20044-4271
                                                          Telephone: (202) 616-4047
                                                          Facsimile:   (202) 616-4159
                                                          michael.dilauro@usdoj.gov

11

Of counsel:

    Mark A. Wunsch
    Keli N. Broadstock
    Assistant District Counsel
    St. Louis District
    U.S. Army Corps of Engineers

## VERIFICATION

Michael A. DiLauro, hereby declares that:

I am an attorney with the Aviation & Admiralty Office, Torts Branch, Civil Division, U.S. Department of Justice, and one of the attorneys for Plaintiff United States of America, and make this verification by authority of Plaintiff and on its behalf.  I have reviewed the foregoing Complaint, know the contents thereof, and, from information officially furnished to me, believe the same to be true.

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 13th day of January, 2014.

>*Michael A. DiLauro*
>MICHAEL A. DiLAURO
>Trial Attorney
>U.S. Department of Justice
>Torts Branch, Civil Division